UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

INNOCENT CEDENO

Plaintiff                         Civil Action No.

V.

Defendants

ANFI COLLECTIONS

LEADING EDGE RECOVERY SOLUTIONS LLC.

ASSET ACCEPTANCE LLC.

MIDLAND CREDIT MGMT INC.

JC CHRISTENSEN & ASSOCIATES, INC.

CAVALRY PORTFOLIO SERVICES LLC.

VERRI FACT INC.

NCO FINANCIAL SYSTEMS

## COMPLAINT

### Parties

1. The Plaintiff (Innocent Cedeno) is a resident of Stoughton, MA 02072, County of Norfolk, and a citizen of the United States.

2. Defendant ANFI (hereafter ANFI) is a third party debt collector that regularly collects defaulted debts with a usually address of P.O Box 3427 Bloomington IL, 61702-3427.

3. Defendant Leading Edge Recovery Solutions (hereafter Leading Edge) is a third party debt collector that regularly collects debts with a usually address of 5440 North Cumberland Suite 300. Chicago, IL 60656 (800) 663-4707

4. Defendant Asset Acceptance LLC. (hereafter Asset) is a third party debt collector that regularly collects debts with a usually address of 28405 Van Dyke, Warren, MI 48093.

5. Defendant Midland Credit Management Inc. (hereafter Midland) is a third party debt collector that regularly collects debts with a usually address of 8875 AERO DR STE 200 SAN DIEGO, CA 92123.

6. Defendant JC Christensen And Associates, INC. (hereafter JC) is a third party debt collector that is not registered to collect debts in Massachusetts that regularly collects debts with a usually address of 200 14th Ave E, Sartell, MN 56377.

7. Defendant Cavalry Portfolio Services LLC. (hereafter Cavalry) is a third party debt collector that regularly collects debts with a usually address of 4050 E Cotton Center Blvd Phoenix, AZ 85040.

8. Defendant Verifacts Inc. (hereafter Verifacts) is a third party debt collector that regularly collects debts with a usually address of 204 1ST AVE STERLING, IL 61081.

9. Defendant NCO Financial Systems (hereafter NCO) is a third party debt collector that regularly collects debts with a usually address of 507 Prudential Rd Horsham, PA 19044.

**Jurisdiction**

10. This court has jurisdiction over this matter pursuant to 15 U.S.C. §1681p and 28 U.S.C. §1332.

11. The occurrences which give rise to this action occurred in Massachusetts and Plaintiff resides in Massachusetts and all defendants transact business in Massachusetts.

## FACTS

12. This case is over $75,000 in violations committed by all the defendants.

13. All condition precedence to the bringing of this action has been performed by the plaintiff.

14. This is an action for money damages for violations of the Telephone Consumer Practices Act (hereafter TCPA), Massachusetts Unfair & Deceptive Trade Practices Act (here after MGL 93a), Massachusetts Debt Collection Regulation Act 940 CMR 7.00, (hereafter MDCRA), Fair Credit Reporting Act. (hereafter FCRA).

15. Plaintiff obtained his consumer credit reports from the three major credit reporting agencies and discovered entries by entities that he was unfamiliar with in the reports.

16. Plaintiff determined that his consumer credit report had been obtained on various occasions by entities he did not recognize and without his consent.

17. Plaintiff tried to mitigate and save judicial resources by sending all defendants a Notice of Pending Lawsuit, MGL 93a Demand letters and or Debt Validation letters.

18. Plaintiff has never had any agreement with the Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts, NCO,

19. Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts, NCO continued attempts to collect any amount not authorized by an agreement creating a debt.

20. Plaintiff has never had any agreement with the Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts, NCO.

21. Plaintiff has never applied for an "account" with Defendants defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts, NCO.

22. Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO all pulled Plaintiff Consumer Credit Report without a permissible purpose.

23. Defendant ANFI pulled Plaintiffs credit report on or about August 1, 2011 without a permissible purpose violating the FCRA and MGL 93a and MDCR 940 CMR 7.00.

24. Defendant Leading Edge pulled Plaintiffs credit report on or about June 20, 2011 without a permissible purpose violating the FCRA and MGL 93a and MDCR 940 CMR 7.00.

25. Defendant Asset pulled Plaintiffs credit report on or about May 12, 2012 & February 21, 2012 without a permissible purpose violating the FCRA and MGL 93a and MDCR 940 CMR 7.00.

26. Defendant Midland pulled Plaintiffs credit report on or about May 8, 2012 without a permissible purpose violating the FCRA and MGL 93a and MDCR 940 CMR 7.00.

27. Defendant JC pulled Plaintiffs credit report on or about January 13, 2012 without a permissible purpose violating the FCRA and MGL 93a and MDCR 940 CMR 7.00.

28. Defendant Cavalry pulled Plaintiffs credit report on or about January 5, 2012 without a permissible purpose violating the FCRA and MGL 93a and MDCR 940 CMR 7.00.

29. Defendant Verifacts pulled Plaintiffs credit report on or about December 7, 2011 without a permissible purpose violating the FCRA and MGL 93a and MDCR 940 CMR 7.00.

30. Defendant NCO pulled Plaintiffs credit report on or about June 3, 2011 without a permissible purpose violating the FCRA and MGL 93a and MDCR 940 CMR 7.00.

31. Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO violated the TCPA by calling Plaintiffs cell, wireless numbers and or home phone up to 190 times with no prior express permission given by Plaintiff.

32. Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO

made calls to the plaintiffs cell, wireless and home phone with an automatic telephone dialing system that has the capability to store and dial numbers without human intervention

33. On information and belief, the calls were placed using predictive dialers. The predictive dialers place calls without human intervention until a connection is made, in which case the dialers attempt to connect the recipient with a debt collector.

34. Plaintiff did not authorize the automated placement of calls to his cell, wireless and or home phone.

35. Upon information and belief, Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO obtained plaintiff's cell phone number via skip-tracing.

36. Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO did not identify themselves or leave messages indicating that they were a debt collector in any of these cases.

37. In all instances, on information and belief, Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO utilized an autodialer that had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator to call the plaintiff.

38. At the time of this communication, plaintiff had never previously provided defendants with authorization to telephone plaintiff's cellular, wireless and or home phone.

39. Defendant ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO failed to send Plaintiff written notification of Plaintiff's alleged indebtedness to defendant and plaintiff's right to dispute defendant's allegation within five(5) days of defendant's above referenced initial communication to plaintiff.

40. As of the date of filing this lawsuit, plaintiff has not received written notification of the alleged indebtedness.

41. Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO violated the TCPA even if their actions were only negligent.

42. Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO also called Plaintiff cell phone, wireless number and or home phone using an automatic dialer capable of storing numbers without express consent from Plaintiff.

43. Defendant ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO does not have, and has never had an established business relationship with Plaintiff.

44. Defendant ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO violated MGL 93a by contacting the three credit agencys claiming to have a permissipal purpose.

45. Defendant ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO violated the MDCRA 940 CMR 7.04, defendant's ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO violations include, but are not limited to, the following under 7.04, Contact with Debtors:

Massachusetts Debt Collection Regulation Act 940 CMR 7.00-7.10

**(d) Communicating by telephone without disclosure of the name of the business or company of the creditor and without disclosure of the first and last name of the individual making such communication or a first name and a personal identifier for such individual such as a code or alias, provided however, that any such individual utilizing a personal identifier shall use only one such personal identifier at all times and provided that a mechanism is established by the creditor to identify the person using such personal identifier;**

(e) Causing expense to any debtor in the form of long distance or collect telephone calls, text messaging, download fees, data usage fees, or other similar charges, except the creditor may place non-collect telephone calls to the debtor's place of residence, cellular telephone, or other telephone number provided by the debtor as his/her personal telephone number, subject to the limitations set forth in Section 7.04(1)(f);

(f) Initiating a communication with any debtor via telephone, either in person or via text messaging or recorded audio message, in excess of two such communications in each seven-day period to either the debtor's residence, cellular telephone, or other telephone number provided by the debtor as his/her personal telephone number and two such communications in each 30-day period other than at a debtor's residence, cellular telephone, or other telephone number provided by the debtor as his/her personal telephone number, for each debt, provided that for purposes of this section, a creditor may treat any billing address of the debtor as his place of residence, and provided further, that a creditor shall not be deemed to have initiated a communication with a debtor if the communication by the creditor is in response to a request made by the debtor for said communication;

(g) Placing telephone calls at times known to be times other than the normal waking hours of a debtor, or if normal waking hours are not known, at any time other than between 8:00 a.m. and 9:00 p.m., Eastern time;

(h) Placing any telephone calls to the debtor's place of employment if the debtor has made a written or oral request that such telephone calls not be made at the place of employment, provided, that any oral request shall be valid for only ten days unless the debtor provides written confirmation postmarked or delivered within seven days of

such request. A debtor may at any time terminate such a request by written communication to the creditor;

(i) Failing to send the debtor the following notice in writing within 30 days after the first communication to a debtor at his place of employment regarding any debt, provided that a copy of the notice shall be sent every six months thereafter so long as collection activity by the creditor on the debt continues and the debtor has not made a written request as described in 940 CMR 7.04(1)(h):

(m) Stating that the creditor will take any action, including legal action, which in fact is not taken or attempted on such debtor's account, unless an additional payment or a new agreement to pay has occurred within the stated time period. For purposes of this section, the time period in connection with such statement shall be presumed to expire 14 days from the date the statement is made, unless otherwise indicated by the creditor.

7.05: Contact With Persons Residing in the Household of a Debtor

(1) A creditor may assume that all contacts directed to the debtor's household are received either by the debtor or persons residing in the household of the debtor unless the creditor knows or should know information to the contrary.

(2) It shall constitute an unfair or deceptive act or practice for a creditor to imply the fact of a debt, orally or in writing, to persons who reside in the household of a debtor, other than the debtor.

(3) It shall constitute an unfair or deceptive act or practice for a creditor to contact or threaten to contact persons who reside in the household of a debtor, other than the debtor, in any of the following ways:

**(a) Using profane or obscene language;**

**(b) Placing telephone calls, disclosing the name of the business, or company of the creditor, unless the recipient expressly requests disclosure of the business or company name;**

**(c) Causing expense to any such person in the form of collect or long distance telephone calls, text messaging, download fees, data usage fees or other similar charges;**

**(d) Engaging any such person in non-identifying communication via telephone with such frequency as to be unreasonable or to constitute harassment to such person under the circumstances, and engaging any person in communications via telephone, initiated by the creditor, in excess of two calls in each seven-day period at a debtor's residence and two calls in each 30-day period other than at a debtor's residence, for each debt;**

46. Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO pulled plaintiff credit report claiming that they had a permissible purpose under **15 USC 1681b,** Permissible purposes of consumer reports, **Collection of an account,** this is far from the truth.

47. The word **account** under the FCRA is not a credit card at all, it is exactly what > § 1693a Definitions says it is a **demand deposit, savings deposit, or other asset account (Stocks & Bonds), this is the meaning of Bank account & stocks and bonds, not an open ended account which is a credit card.**

48. Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO have for years claimed that they had a permissible purpose because they were collection on an

account and 1693a clearly states what an account is and what it is not, an account is a bank account and a credit card is a credit plan period.

49. 15 USC 1681b **Permissible purposes of consumer reports** states:

(a) **In general** Subject to subsection (c) of this section, any **consumer reporting agency (NOT A DEBT COLLECTOR)**may furnish a consumer report under the following circumstances and no other: (1) In response to the order of a court having jurisdiction to issue such an order, or a subpoena issued in connection with proceedings before a Federal grand jury. (2) In accordance with the written instructions of the consumer to whom it relates. (3) To a person which it has reason to believe—(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, **or review or collection of an account of, the consumer; or**

50. Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO are misplaced regarding the definition of an **account** here **(2)** the term "**account**" means a **demand deposit, savings deposit, or other asset account (other than** an occasional or incidental credit balance in an open end credit plan as defined in section 1602 (i) [1] of this title), So lets see what 1602 (i) has to say about defining an open end credit plan **here it is** 15 U.S.C 1602(i) The terms "open end credit plan" and "open end consumer credit plan" mean a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance. A credit plan or open end consumer credit plan which is an open end credit plan or open end consumer credit plan within the meaning of the preceding sentence is an open end credit plan or open

end consumer credit plan even if credit information is verified from time to time. as described in regulations of the Bureau, established primarily for personal, family, or household purposes, but such term **does not** include an account held by a financial institution pursuant to a bona fide trust agreement; Plaintiff state "**This clearly defines a Credit Card and Home equity loans**".

51. Plaintiff has suffered mere injury to his reputation or creditworthiness caused by the inquiries appearing on his credit report and plaintiff has suffered emotional and mental distress loss of sleep and humiliation due to having inquires and getting denied over a negative credit rating and the stigma accompanying all the credit pulls by the defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO.

52. Plaintiff has suffered damage and seeks relief through the courts.

53. Plaintiff has suffered credit denials and loss of credit opportunities, plaintiff has proof of payment of elevated interest rates, and excessive points and other fees that plaintiff had to pay and is paying due to my lowered credit rating from these inquiries from the defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO.

54. Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO have reported false information about plaintiff to credit reporting agencies, including Equifax, Experian, and Trans Union, and or Innovis, and continued to do so despite plaintiff's numerous disputes about the account that were transmitted through the credit reporting agencies.

55. The inaccuracies include, but are not limited to, the amount of the alleged debt, the date of alleged delinquency, the status of alleged delinquency, and the status of dispute by plaintiff.

56. Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO did not provide a notice of such furnishing of negative information, in writing, to plaintiff which is a violation of MGL 93a, MDCRA 940 CMR 7.00.and the FDCPA.

57. Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO have repeatedly failed to conduct a proper investigation of plaintiff's disputes and repeatedly failed to inform the credit reporting agencies that the account was in dispute.

58. Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO obtained plaintiff's credit report from the Consumer Reporting Agencies, thereby reducing my credit score.

59. Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO used or obtained Plaintiff's consumer report for an impermissible purpose and did not certify the purpose through a general or specific certification.

60. Plaintiff sent dispute letters to Experian, Equifax, Trans Union and Innovis, regarding inaccuracies on his credit report, reported by defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO the details of plaintiff's disputes are outlined in those letters.

## COUNT I

### DEFENDANT'S ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts & NCO VIOLATIONS OF THE TELEPHONE COMMUNICATIONS ACT 47 U.S.C. §227(b) (1) (A) (iii)

61. Plaintiff alleges and incorporates the information in paragraphs 1-54.

62. Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO has demonstrated willful or knowing non-compliance with 47 U.S.C. §227(b)(1)(A) **(iii)** by using an automatic telephone dialing system to call Plaintiff's cell, home & or wireless telephone phone.

63. Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO has demonstrated willful or knowing non-compliance with 47 U.S.C. §227(b)(1)(A)(iii) by calling the plaintiff's cell, home & or wireless telephone phone numbers which is **any service for which the called party is charged for the call** contrary 47 U.S.C. **§227(b)(1)(A)(iii)** which states in part;

**§ 227. Restrictions on use of telephone equipment**

**. . . (b) Restrictions on use of automated telephone equipment.**

**(1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—**

**(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—**

**(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; . . .**

The TCPA, 47 U.S.C. §227(b)(3), further provides:

**Private right of action.**

**A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—**

**(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,**

**(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or**

**(C) both such actions.**

**If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

Defendant violated the TCPA by placing automated calls to plaintiffs' cell, wireless and or home telephone.

**WHEREFORE**, Plaintiff demands judgment for damages against defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO for Actual and or Statutory damages, and attorney's fees and costs.

## COUNT II
## DEFENDANT'S ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO VIOLATIONS OF THE TELEPHONE COMMUNICATIONS ACT 47 U.S.C. §227(b) (2) (5)

64. Plaintiff alleges and incorporates the information in paragraphs 1-63.

65. Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO has demonstrated willful or knowing non-compliance with 47 U.S.C. §227(b)(2)(5) by calling the Plaintiff's phone number, more than once during a 12 month period.

66. Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO called the Plaintiff's cellular, wireless and or home phone contrary to 47 U.S.C. §227(b)(2)(5).

67. Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO called plaintiffs cell, wireless and or home phone using an automatic dialer that has the capacity to dial & store telephone numbers without human intervention.

**WHEREFORE,** Plaintiff demands judgment for damages against Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO for Actual and or Statutory damages, and attorney's fees and costs to bring this complaint.

## COUNT III

## VIOLATION OF THE FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. §1681 BY DEFENDANTS ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO

68. Plaintiff alleges and incorporates the information in paragraphs 1-67.

69. Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

70. Consumer credit report is a consumer report within the meaning of the FCRA, 15 U.S.C. §1681a(d).

71. The FCRA, 15 U.S.C. § 1681b defines the permissible purposes for which a person may obtain a consumer credit report.

72. (a) **In general** Subject to subsection (c) of this section, any **consumer reporting agency (NOT A DEBT COLLECTOR)** may furnish a consumer report under the following circumstances and no other:

73. Such permissible purposes as defined by 15 U.S.C. § 1681b are generally; if the consumer makes application for credit, makes application for employment, for underwriting of insurance involving the consumer, or is offered a bona fide offer of credit as a result of the inquiry.

74. Plaintiff has never had any business dealings or any accounts with, made application for credit from, made application for employment with, applied for insurance from, or received a bona fide offer of credit from defendants ANFI, Leading Edge, Asset,

Midland, JC, Cavalry, Verifacts and NCO.

75. At no time did plaintiff give his consent to defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO acquire his consumer credit report from any credit reporting agency.

76. At no time did Plaintiff give his consent for defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO to acquire his consumer credit report from any credit reporting agency.

77. The actions of defendant ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO in obtaining the consumer credit report of the plaintiff with no permissible purpose, or plaintiffs consent, was a willful violation of FCRA, 15 U.S.C. § 1681b and an egregious violation of plaintiffs right to privacy.

**WHEREFORE,** Plaintiff demands judgment for damages against defendants, ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO for statutory damages of $1000.00, attorney's fees, and costs pursuant to 15 U.S.C. § 1681n.

### COUNT IV
### Violation of the Fair Debt Collection Practices Act.
### BY DEFENDANTS ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO

78. Plaintiff alleges and incorporates the information in paragraphs 1-77.

79. Plaintiff is a consumer within the meaning of the FDCPA, 15 U.S.C. §1692 a (3).

80. Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO are debt collector within the meaning of FDCPA §1692a (6).

81. Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO willfully violated the FDCPA.

82. Defendant's violations include, but are not limited to, the following:

(a) Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO willfully violated FDCPA, 15 U.S.C. §1692 f (1) by attempting to collect a debt not authorized by an agreement.

(b) Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO willfully violated FDCPA, 15 U.S.C. §1692 b (2) by stating that the consumer owes any debt.

(c) Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO willfully violated FDCPA, 15 U.S.C. §1692 g (B) by failing to cease collection efforts until debt is validated.

(d) Defendants Calvary, Portfolio, NCO, I.C, Protocol, Stella, American, Allied, Principe, RJM or Tate willfully violated FDCPA, 15 U.S.C. §1692 e (2) by misrepresenting the character, amount and legal status of the
   alleged debt.

(e) Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO willfully violated FDCPA, 15 U.S.C. §1692 e (10) by falsely representing or using deceptive means to collect a debt.

(f) Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO willfully violated FDCPA, 15 U.S.C. §1692 f (5) by causing charges to be made to consumer's (Plaintiff's) cell phone and wireless number.

83. Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO to correct their reporting errors of Plaintiffs Credit Report that subjected Plaintiff to denial of credit.

84. Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO violated the TCPA, FCRA, MDCRA 940 CMR 7.00.

85. Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO refused to stop all calls after Plaintiff sent several requests by mail and verbally informed there call centers.

86. Defendant ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO intentional called plaintiff and made plaintiff phone ring and required plaintiff to stop what he was doing and to answer a (ROBO) call made by an automatic telephone dialing system that has the capability to store and call number without human intervention and it caused plaintiff harm and plaintiff seeks relief.

**WHEREFORE**, Plaintiff prays that this honorable Court award him damages from defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO for the claims set forth herein including litigation fees and costs, sleep and emotional stress, Compensatory, Actual and punitive damages, damages to plaintiffs credit reports and any other and further relief which is just and proper under the circumstances.

### COUNT V
### VIOLATIONS OF THE MASSACHUSETTE DEBT COLLECTION REGULATIONS ACT BY DEFENDANTS ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO

87. Plaintiff alleges and incorporates the information in paragraphs 1-86.

88. Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO placed calls to the plaintiff's telephone numbers, defendants knew or should have known that the phone calls made inconvenient to the consumer, such communication are prohibited by MDCRA 940 CMR 7.00-7.10. Plaintiff demands $500.00 per each phone call made to plaintiff's telephone numbers.

89. Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts, and NCO are debt collector within the meaning of §CMR 7.03

90. Defendants ANFI, Leading Edge, Asset, Midland, JC, Cavalry, Verifacts and NCO violated § CMR 7.04 by (d) Communicating by telephone without disclosure of the name of the business or company of the creditor and without disclosure of the first and last name of the individual making such communication or a first name and a personal identifier for such individual such as a code or alias, provided however, that any such individual utilizing a personal identifier shall use only one such personal identifier at all times and provided that a mechanism is established by the creditor to identify the person using such personal identifier;

(e) Causing expense to any debtor in the form of long distance or collect telephone calls, text messaging, download fees, data usage fees, **or other similar charges**, except the **creditor (NOT A THIRD PARTY DEBT COLLECTOR)** may place non-collect telephone calls to the debtor's place of residence, cellular telephone, or other telephone numbers provided by the debtor as his/her personal telephone number, subject to the limitations set forth in Section 7.04(1) (f);

(i) Failing to send the debtor the following notice in writing within **30 days** after the first communication to a debtor at his place of employment regarding any debt, provided that a copy of the notice shall be sent every six months thereafter so long as collection activity by the creditor on the debt continues and the debtor has not made a written request as described in 940 CMR 7.04(1)(h):

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable as a matter of law.

Respectfully submitted this 21st day of January, 2014.

INNOCENT S. CEDENO

*[signature]*

140 Palisades Circle

Stoughton, Ma 02072

sanssoucitoco@hotmail.com

Telephone #: 617-459-9555